John H. Smith and James M. Burroughs, Executors of the last will and testament of Joseph Beabout, deceased, Appellants, *v.* Dr. Oliver L. Blachley.

*Principal and agent—Illegal contract—Intent.*

While the courts will not enforce an illegal contract, yet if a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property belonging to the master, he is bound to turn it over to him, and cannot shield himself from liability therefor upon the ground of the illegality of the original transaction.

An agent cannot set up a pretended illegal transaction to retain money extorted from his principals by gross falsehood to further a mythical illegal transaction. The money still belongs to the principal, and he can rightfully demand it as soon as he discovers the fraudulent conduct of his agent.

The law takes no cognizance of a mere illegal intent; nor does it impose as a penalty for such intent immunity to him who has plundered one guilty of it. The illegal intention must be accompanied by an act which is criminal or prohibited by law, in order to make the transaction illegal.

*Principal and agent—Physician—Illegal contract—Fraud—Statute of limitations—Abortion.*

Where a physician in attendance upon two families, in one of which there is a son, and in the other a daughter, alleges that an illness of the daughter was caused by an abortion, and also falsely represents to the

fathers of the two families that they are about to be prosecuted for the crime by a society, and in consequence of these representations receives money from them to be used in stifling the supposed prosecution and keeps the money himself, and constantly urges them to keep quiet about the matter, the persons who paid the money are entitled to recover it back, and the statute of limitations will not begin to run against them until the fraud is discovered.

Argued Oct. 31, 1898. Appeal, No. 30, Oct. T., 1898, by plaintiffs, from order of C. P. No. 3, Allegheny Co., Feb. T., 1896, No. 18, refusing to take off nonsuit. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover money had and received. Before Mc-CLUNG, J.

After plaintiff's evidence was all in the trial court entered a compulsory nonsuit which it refused to take off.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the order refusing to take off nonsuit.

*Franklin P. Iams*, with him *C. C. Brock, J. W. Ray* and *H. B. Axtell*, for appellants.—When the parties do not stand in pari delicto, and it appears that the contract or deed was obtained by duress, equity will not refuse its aid: Bayley v. Williams, 4 Giff. 638; Sharon v. Gager, 46 Conn. 189.

The evidence conclusively shows that there was no executed contract to compound the alleged felony. At most, the contract to compound the felony still remains in fieri, and the fact that the proposed compounding of the felony was not effected by reason of the fraud of the defendant will not avail in this case: Lacaussade v. White, 7 Term Rep. 531; Norton v. Blinn, 39 Ohio, 145; Dauler v. Hartley, 178 Pa. 23; Lestapies v. Ingraham, 5 Pa. 71; Fox v. Cash, 11 Pa. 206.

Blachley cannot be permitted to set up the statute of limitations as a defense in these cases because of his fraud and concealment, and because by his fraud and false pretenses he made himself a trustee ex maleficio of the money received by him for the plaintiffs: Phila. v. Brown, 19 Phila. 379; Bricker v. Lightner, 40 Pa. 199; Mitchell v. Buffington, 10 W. N. C. 361; Thomp-

son v. Smith, 7 S. & R. 214; Pennock v. Freeman, 1 Watts, 410; Rush v. Barr, 1 Watts, 110; Kane v. Bloodgood, 7 Johns. Ch. 90; Bank v. Forster, 8 Watts, 12; Bartholomew v. Leech, 7 Watts, 472; McDowell v. Potter, 8 Pa. 189; Ferris v. Henderson, 12 Pa. 49; McDowell v. Young, 12 S. & R. 115.

*E. G. Ferguson,* with him *J. S. Ferguson,* for appellee.

OPINION BY MR. JUSTICE DEAN, November 14, 1898:

Blachley, the defendant, a physician, practised his profession in the years 1888 and 1889 in Morris township, Washington county. In the adjoining township lived Joseph Beabout, farmer, his wife and daughter Alice, the latter a single woman; also, John McCullough, farmer, his wife and son. Blachley was at times called in as a physician to both families where they lived in the country, about three miles apart, while the physician's office was about five miles from both. In February, 1887, Blachley was called in to attend Alice, the daughter of Beabout, in an illness which he said was the result of a criminal abortion. About February or March, 1888, after she was restored to health, he called upon McCullough, and soon after upon Beabout, and represented to them that the Humane Society of Pittsburg was about to institute a criminal prosecution against the members of both families for procuring the abortion, and suggested to them, that he was in conference with the agent of the society, and that the matter might through him be hushed up by their paying over to him the sum of $3,000, which he would give to the agent to stop further inquiries. Several interviews were subsequently had, in which the representations were repeated. He dwelt largely on the disgrace which such a prosecution would bring on both families; further, offered to assist them in obtaining the money through a bank in the town of Washington. On May 15, following, Beabout and McCullough went to Washington, met Blachley, got the money from the bank and paid it over to him. He told them the agent of the society had not yet arrived but when he came, he, Blachley, would pay the money to him and take his receipts. Afterwards, he advised them frequently to keep quiet concerning the matter; to tell no one; not to employ counsel or advise with others, or trouble might result. Deterred by

this advice and caution, they made no inquires until a short time before this suit was brought, November 16, 1895. Then McCullough (Beabout having died in the mean time) discovered that no prosecution had been contemplated by the Humane Society, and so far as could be discovered, it had neither knowledge of nor authority to institute such prosecution; further, that Blachley had pocketed the money and still retained it; that the whole story narrated by him from beginning to end was a tissue of falsehoods concocted to extort money from them. The plaintiff offered ample evidence tending to establish these facts. As the court below entered a compulsory nonsuit, we must consider them, for the purpose of review, as fully proved.

The defendant in addition to non assumpsit pleaded the statute of limitations. The court below sustained the latter plea, saying, " Under the circumstances their (the plaintiffs') right of action against Blachley accrued and the statute of limitations began to run as soon as the money was paid to him. They cannot be heard to say that he committed a fraud upon them by failing to consummate an arrangement which was in itself a fraud upon the administration of justice. The plaintiffs are the parties who, to maintain their action, are compelled to uncover and invoke the aid of the corrupt agreement. This being the case, they cannot profit by it, either directly, as the foundation of an action, or by using it to toll the statute."

Is this conclusion warranted by the facts? It is the policy of the law to leave parties to an illegal transaction where it finds them, by refusing relief to either party. Assuming, what is not proved, that the crime of abortion was committed, and that those who participated in procuring it were the six members of the two families, and that the parties on the one side to the composition of the crime were the heads of the two families, Beabout and McCullough, where is the other party? Blachley was not the prosecutor, and did not pretend to be. According to his own statement he was their physician, friend and adviser; he urged them to stifle the prosecution by paying money to the Humane Society, the pretended prosecutor, the other party to the composition. He was the mere agent of the Beabouts and the McCulloughs. Assume then, as plaintiffs allege and defendant admits, that he was their agent to carry

the money to the society, and assume further, that he was lying all the time to them; that in fact there was no such prosecutor; then the offense was impossible of commission for want of parties. This leaves Blachley in the position of a mere blackmailer who has extorted money from his patients, from those who confided in him, and whose friend he pretended to be, by falsehoods which operated on their fears; and leaves them in the position of having given money to their agent and supposed friend to be used by him in compounding a crime that they and their families might be saved from scandal. What is the policy of the law as to the relation thus assumed by Blachley, the agent, towards these plaintiffs, his principals? It is to exact from such agent the most unflinching fidelity to his principals; it abhors any unfair dealing, treachery or overreaching. The same rule governs as between master and servant, client and counsel, physician and patient; the relation is one of trust and confidence; they do not deal at arm's length; the principal is in the power of the agent; he is helpless against wrong. May this confidant by falsehood entrap his principal into an illegal intent, get possession of his property or money, and then claim exemption from restitution by pleading that his principals intended an illegal act? We can conceive of nothing more destructive of morals in these relations than to hold such a rule applicable to the facts of the case before us. Such an application would be a license to agents and those occupying confidential relations to plunder their principals.

We have no authority in this state directly to the point one way or the other. Quite a number in other states and in England sustain the view we have taken. In Evans v. Trenton, 4 Zabriskie (N. J.), 764, Evans had been treasurer of the city; he sought to retain $500 of the city's money in addition to his salary out of a fund realized from the issue of currency to raise funds for the city; the extra services were performed in this transaction, which was in violation of the banking laws of the state. When suit was brought against him, he set up the illegality of the transaction as a defense. The Court held: " The mere agent to an illegal transaction cannot set up the illegality of the transaction in a suit by his principal to recover money that has been paid to such agent for his principal on account of

the illegal transaction. This defense can only be set up by a party to the illegal transaction." In Baldwin v. Potter, 46 Vermont, 402, Baldwin employed Potter to make sales of candy by a scheme which was violative of the law prohibiting lotteries. In suit by the principal against the agent for the money so received, the agent pleaded the illegality of the transaction by which he obtained the money. It was held that if the suit had been between the plaintiff and the purchaser of the candies, the parties to the illegal contract, it could not have been maintained, and then the Court says: "But the defendant (the agent) insists that inasmuch as the plaintiff could not have enforced the contract of sale as between himself and the purchaser, therefore, as the purchaser has performed the contract by paying the money to the plaintiff through me as their agent, I can now set up the illegality of the contract of sale to defeat the action brought to enforce a contract on my part to pay the money that I, as agent, received, over to my principal. In other words, because my principal did not receive the money on a legal contract, I am at liberty to steal the money, appropriate it to my own use and set my principal at defiance. We think the law is well settled otherwise." In Wood on Master and Servant, section 202, this is the text: "While the courts will not enforce an illegal contract, yet if a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property belonging to the master, he is bound to turn it over to him, and cannot shield himself from liability therefor upon the ground of the illegality of the original transaction."

There are numerous authorities to the same effect. If then the agent cannot successfully set up the unlawful contract to enable him to hold money received from another for his principal, much less can he set up a pretended illegal transaction to retain money extorted from his principals by the grossest falsehood to further the mythical illegal transaction. The money still belongs to the principal, and he can rightfully demand it as soon as he discovers the fraudulent conduct of his agent.

It is argued that even if no crime was actually committed by plaintiffs, yet there was an intent to commit one when they paid the money to Blachley, and hence even if their agent defrauded them they cannot recover it back. As we have noticed, the intended crime was an impossible one. When conduct sus-

ceptible of two constructions is proved, the intent often determines its criminality; but an intent not carried out by an act, or which is impossible of execution by an act, is not punishable; the law takes no cognizance of an intent existing only in the mind; nor does it impose as a penalty for such intent immunity to him who has plundered one guilty of it. "The illegal intention must be accompanied by an act which is criminal or prohibited by law in order to make the transaction illegal:" 1 Bishop's Crim. Law, sec. 204, et seq.

As to the plea of the statute of limitations, it will not screen defendant from liability if the suits were brought within six years of the discovery of the fraud. There was ample evidence if believed by the jury that defendant had by systematic falsehood and artifice, not only concealed the fraud, but for a long time had deterred his employers from inquiry. Under such circumstances the plea will not avail him.

The judgment is reversed and a procedendo awarded.