## Bangor Trust Co., Appellant, *v.* Christine.

Argued April 15, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER,, JJ.

*W. B. Eilenberger,* with him *Kent & Rockwell* and *Harvey Huffman,* for appellant.—The alleged agreement of defendant is unmoral, against public policy and, therefore, illegal: Hooversville Bank v. Sagerson, 283 Pa. 406; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184.

*J. Willard Paff,* with him *Chester H. Rhodes* and *A. Greenwald Gearhart,* for appellee.—Where the bank holds out even a minor official as being entrusted with certain powers and duties, his acts within the scope of such apparent powers are binding on the bank.

OPINION BY MR. JUSTICE SCHAFFER, May 13, 1929:

This is an action on a promissory note for $10,000, payable on demand, made by defendant to the order of plaintiff. Execution and delivery of the note are admitted. The defense is that defendant received no consideration for it. The trial judge submitted this question to the jury, who found in defendant's favor; from the judgment entered on the verdict plaintiff appeals.

E. P. Buzzard and Floyd M. Hess were respectively president, and secretary and treasurer of plaintiff trust company. At the time of the transaction before us, they were both defaulters to the plaintiff, having fraudulently abstracted its funds to a large amount for the purpose of financially aiding the Masterson Construction Company, in which they were largely interested and of which both were officers.

On the afternoon of November 8, 1923, the date of the note, Buzzard and Hess went to the place of business of defendant, who was the former's son-in-law, and according to defendant's version Hess asked him to loan the Bangor Trust Company his note for $10,000, upon which request he said he hesitated and Hess then said, "Don't worry, it's at the suggestion of the banking department and will only be for a little while," whereupon without anything more being said on the subject he filled out the note in suit and gave it to Hess. He said he received nothing for it then or at any other time. Hess's recital of what happened is quite different. He testified that he and Buzzard told defendant that the line of credit of the Masterson Construction Company was heavier than they could carry in the Trust Company and that they would have to get outside names in order to continue to carry on its operations, and they asked defendant to give them his note for $10,000, payable to the order of the Trust Company, for which they would give him their joint note to protect him; whereupon the notes were exchanged. Buzzard, who was in jail, was not called as a witness.

Hess and Buzzard proceeded to the Trust Company and there falsely entered the note of record as one purchased by the Trust Company and substituted it among the company's cash items, as an asset belonging to it, for overdraft checks of the Construction Company, of substantially similar amount, which they had fraudulently paid out of the Trust Company's funds and carried among its cash items. The checks were returned by Buzzard and Hess to the Construction Company. The result of defendant's act in signing and delivering the note so far as the Trust Company is concerned was that it was deprived of the checks which it could have asserted as an indebtedness against the Construction Company. Under the circumstances as they were shown, the defense of no consideration was an inadequate one.

It is of the highest public importance that all dealings with banks and trust companies shall be conducted along lines of strictest integrity. For the safeguarding of the public they are subjected to governmental oversight and inspection—indeed they are almost in the nature of public institutions—and whoever lends himself to acts the effect of which is to lessen their stability or deceive the governmental agencies whose duty it is to oversee their conduct and inspect them, must abide the consequences of what he does. Taking defendant's own version of what occurred, we have this state of facts: His father-in-law, who was president of the Trust Company, accompanied by its other chief officer, called upon him with the request that he make a note to it, although he was to receive nothing from the Trust Company, saying that they did so at the suggestion of the banking department, whose duty it was to see that all transactions with the company were honest ones. If he accepted this statement as true, then he knew he was doing something which the banking department should not have permitted, giving the bank a note apparently valid which was not to be paid. He necessarily knew that the transaction was intended to misrepresent something to somebody concerned for the bank's solvency. This being so, he cannot set up that he received no consideration for the paper: First National Bank of Greencastle v. Baer, 277 Pa. 184; Bank of Hooversville v. Sagerson, 283 Pa. 406. What was said in State Bank v. Forsyth, 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501, pages 509 and 510, could be appropriately said here: "If......the transaction was a mere trick to make it appear to the government and to the creditors and stockholders of the bank that it had a valuable note when in fact it did not have one, the result must be the same; for, when parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound him-

self. It will never do for the courts to hold that the officers of a bank, by the connivance of a third party, can give to it the semblance of solidity and security, and, when its insolvency is disclosed, that the third party can escape the consequence of his fraudulent act.......
How can it be possible for a man of ordinary intelligence to suppose that a request for an accommodation note for a large amount, made by a cashier, is intended to be for the benefit of the bank? Notes are ordinarily given to a bank for the purpose of borrowing money therefrom. We can conceive of no circumstances under which a bank can require an accommodation note on its own account for any legitimate purpose. It seems to us that the mere request carries notice that the purpose for which such paper is intended to be used is not a lawful one. What legitimate end would possibly be served by carrying in a bank commercial paper which was not to be paid under any circumstances? Obviously none. The only possible design would be to deceive some one, either the stockholders, the depositors, or the bank examiner, who acts for them in the name of the state. The trial judge should have held the defense of no consideration, unavailing under defendant's own showing and should have given binding instructions for plaintiff.

The judgment is reversed, with directions to the court below to enter judgment for plaintiff for the amount of its claim with interest.