Slater, Appellant, *v.* Slater.

Argued May 26, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*James H. McHale,* for appellant.

*Sabato M. Bendiner,* with him *Frank W. Hatfield* and *Ralph C. Busser, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, June 26, 1950:
Plaintiff brought this appeal from an order of the court below dismissing his Bill in Equity for the ap-

pointment of a receiver for an alleged partnership, the enjoining of disposition of its property, and an accounting of the affairs of the partners inter se.

Plaintiff and defendant, who are brothers, in 1928 entered into an oral partnership agreement to engage in the hauling and trucking business under the firm name of "Slater Brothers". A certificate of authorization was issued to them by the Public Service Commission (now the Public Utility Commission) of Pennsylvania in January, 1936, and in August, 1938, the Interstate Commerce Commission issued them a similar license to operate in interstate commerce. Defendant, the better educated of the two partners, handled all the managerial details of the firm's business while plaintiff, who is some years younger, worked as a truck driver and assisted in the repair and maintenance of the trucks. In November, 1947, a transfer of the Certificate issued by the Interstate Commerce Commission to the partners was made to defendant in his own name and a few months later a similar transfer of the Pennsylvania Public Utility Commission Certificate was attempted but failed because of defects in the application. This Bill in Equity was then filed in May, 1949, charging defendant with violations of the partnership agreement including, inter alia, the acquisition by defendant of the Interstate Commerce Commission Certificate in his own name by forgery or trickery, a fraudulent attempt to obtain the Pennsylvania Public Utility Commission Certificate, conversion of partnership funds, and the failure to keep accurate partnership records or to furnish plaintiff with an accounting thereof. Defendant, in his answer, denied the accusation of fraud in the obtaining of the transfer of either Certificate but admitted the existence of the fraternal partnership. Defendant further averred, however, that the partnership was terminated by mutual agreement in October, 1939, that the assets were then divided in

tax returns reporting the entire proceeds derived from a manner satisfactory to both parties, and that they have since carried on their trucking businesses as separate and independent enterprises. The learned court below dismissed plaintiff's exceptions to the chancellor's findings in favor of defendant and this appeal followed.

The undisputed evidence established that each party, at all times subsequent to 1939, filed separate income their individual business activities and that, shortly after the alleged dissolution, casualty insurance was charged to each of them proportionately, and from 1940 on, to each of them separately. Life insurance policies, formerly paid by the partnership, were thereafter paid by each individually. The parties billed their respective customers on their individual billheads and each retained the proceeds thereby obtained for his own use. Each provided for his own expenses and at no time, during the intervening nine years, did either brother demand an accounting from the other or a share in the profits although they continued to use the same office, the same storage space for their trucks and the same telephone to receive orders from their customers. Furthermore, when either brother needed assistance in the nature of an additional truck or driver, the other usually supplied it but billed the customer in his own name for the services rendered. Only on one occasion, when plaintiff was incapacitated for a month, did the brothers vary from this procedure. At that time defendant serviced plaintiff's primary customer but directed that all payments be sent to plaintiff and be retained by him. To counter this evidence, plaintiff submitted copies of forms and reports, filed with the Unemployment Compensation Bureau, the Philadelphia Wage Tax Division and other agencies, which defendant had signed, subsequent to October, 1939, as a partner. Copies of the transfer applications signed by both parties as partners and submitted to the Interstate Com-

merce Commission and the Pennsylvania Public Utility Commission for the transfer to defendant of the respective certificates, originally issued to the partnership firm, were also introduced. The effect of these documents offered by plaintiff was considerably weakened, however, by further evidence of the brothers' informal methods of doing business and the concern felt by both that an application for a change might result in more restrictive hauling rights than those they then possessed. The learned chancellor concluded from all the evidence introduced that the partnership had been dissolved by mutual assent in October, 1939, and that plaintiff's signature on the application blanks for the transfer of the certificates had been obtained by defendant without trickery, fraud, or forgery. These findings were affirmed by the court en banc. Since the evidence on either side is not so persuasive as would require the withdrawal of the case from a jury, we follow the well established rule that, where a chancellor's findings are affirmed by the court en banc, they will be accepted if supported by proof sufficient to require submission to a jury in a trial at law, and concur in these findings of the chancellor: *Hayden v. Hayden*, 354 Pa. 11, 13, 46 A. 2d 502; *Belmont Lab., Inc. v. Heist*, 300 Pa. 542, 546, 151 A. 15.

Plaintiff has further contended that, even if the court find, as a fact, that he agreed to a dissolution of the partnership, it must declare that termination agreement a nullity because of an illegal contract to operate as individual truckers, contrary to the provisions of the two certificates issued to the brothers as partners, formed constituent part of that dissolution agreement. However, as this Court has said in *Paul v. Paul*, 266 Pa. 241, 245, 109 A. 674: ". . . if he [plaintiff] cannot prove his case without showing he has broken the law or participated in a fraudulent transaction, the court will not assist him." Plaintiff, a co-participant in the

illegal agreement, therefore, cannot now argue that the partnership is still existent as a matter of law because of the vitiating effect of the illegal contract.

The difference in the ages of the brothers and their positions in the partnership have prompted plaintiff to argue that a confidential relationship existed between himself and defendant and that the latter, in dissolving the association and distributing the assets, took advantage of plaintiff's ignorance of the affairs of the business to further his own ends and thereby rendered himself accountable to plaintiff. So much of the evidence concerning the partnership affairs, at the time of the alleged dissolution, as was available for presentation to the court indicated on the contrary, that a fair and equitable distribution of the assets had been made and we would not now be justified in disturbing the findings of the learned court below in defendant's favor on this ground: *Hayden v. Hayden,* supra. Furthermore, plaintiff is guilty of laches for having failed to show any satisfactory reason for his delay of nine years in bringing an action to contest the partnership settlement. Courts are reluctant to inquire into such settlements and if a partner permits one to stand for a long time unquestioned, his laches will bar an action to open it or set it aside, unless the delay is satisfactorily explained: *Moore's Estate (No. 2),* 228 Pa. 523, 532, 77 A. 902.

Plaintiff has not been able to establish the alleged continued existence of the partnership or to sustain his other grounds for equitable relief and we conclude the learned court below properly dismissed his bill.

Decree affirmed at plaintiff's cost.