Lannamann, Appellant, *v.* Lannamann.

Argued March 20, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*E. Perry Campbell*, for appellant.

*J. S. Grossman*, with him *Harold D. Saylor*, for appellee.

OPINION BY ARNOLD, J., July 17, 1952:

The wife-plaintiff filed a complaint asking for the annulment of her marriage. The sole ground stated was "that said marriage ceremony [occurring December 30, 1950] was gone through in jest, that neither party thereto intended to contract a valid marriage, and that said parties undertook that no legal obligation should be thereby created." The defendant offered no testimony but filed an answer denying that the ceremony "was gone through in jest." He averred that the marriage itself was not to be consummated until February, 1951, and that it was never his intention to consider the ceremony binding. The court below refused the annulment and the wife-plaintiff appealed.

The dissolution of marriage is entirely statutory[1] in Pennsylvania, and is codified in the Divorce Law,

---

[1] *Dash v. Dash*, 357 Pa. 125, 126, 53 A. 2d 89; *Barnett et al. v. Kimmell*, 35 Pa. 13; *Cantor v. Cantor*, 70 Pa. Superior Ct. 108, 111.

as amended, 23 PS §1 et seq. Section 12 thereof reads: "ANNULMENT OF VOID MARRIAGES. In all cases where a supposed or alleged marriage shall have been contracted, which is *absolutely void* by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was *absolutely void* when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void . . ." (Italics supplied). It is very doubtful that the marriage of the parties here was void ab initio. Cases in other appellate courts involving marriage through jest are under legislation very different from ours.

However, under the testimony here the marriage ceremony was not performed in jest. The facts to which the plaintiff and her mother testified are, briefly, as follows: That at the time of the marriage ceremony in Allen, Maryland, on December 30, 1950, she was past 18 years of age, a resident of Montgomery County, Pennsylvania, and was attending Swarthmore College. On August 18, 1950, she drove to Salisbury, Maryland, and had a luncheon engagement with the defendant, whom she had known for some time. He suggested that they get a marriage license; that "it wouldn't hurt any and would make him feel better" and as though she was really "his girl." She agreed and the license was obtained. The defendant was well pleased. She returned home and went back to college. She frequently met the defendant but also had "dates" with other boys, and the defendant had "dates" with other girls. In December, 1950, the defendant suggested that they drive to Allen, Maryland, and have a marriage ceremony performed by a named minister. She testified: "[He] more or less dared me, so I said OK." Before they got to Allen, Maryland, she wanted to go back, and

the defendant said that they were just going to go through the ceremony, and that later if it was regretted, "it probably won't be too hard for your Mother to get it annulled." She stated that he argued with her and said it didn't really mean anything, that if they didn't go through the ceremony it would finish everything between them, and that they had at least from December to June to decide whether they wanted to "take it seriously"; and that "he rationalized that it would make me feel more secure if we went through a ceremony." The marriage was never consummated; and she returned to college and the defendant went back to work. They saw each other as they did before. She testified that they concluded that they had been unwise, that their parents should be told, and that they ought to "[get] it cleaned up"; and if at any later date they wanted to get married they would have the ceremony performed in a church, with their families and friends present. On March 31, 1951, they told the plaintiff's mother. The defendant was about to enter the Navy and desired that the marriage ceremony be translated into reality. To this she would not agree.

This was certainly not a marriage ceremony performed "in jest," and it was not void ab initio. Actually the parties were married, under an agreement that the marriage should not be immediately consummated, and that they could change their minds thereafter. In other words, they agreed that it should be a trial marriage, and that either or both had a six month option to annul it. Since in getting married both the parties did only what they intended to do, and since there was no fraud, duress or lack of mental capacity, the marriage is valid. The minority of the plaintiff is of no importance. The law of the state where the marriage was celebrated permits marriage between persons over eighteen years of age. In any event, where parties under age are mar-

ried, the only question is whether they are of the age of consent, i.e. sixteen. There is no contention that Maryland law differs from that of Pennsylvania.

Order affirmed.