MATTER OF M———

## In DEPORTATION Proceedings

### A–10335093

*Decided by Board December 23, 1958*

**Nonquota status—Alien spouse not entitled to nonquota status where marriage was contracted solely to obtain quota exemption.**

Respondent's marriage to a United States citizen spouse, contracted solely to facilitate his admission to the United States, does not entitle him to issuance of a nonquota visa. Where no *bona fide* husband-wife relationship was intended, the marriage is deemed invalid for immigration purposes regardless of whether it would be considered valid under the domestic law of the jurisdiction where performed.

CHARGES:

Order: Act of 1952—Section 241(a)(1)—No valid immigrant visa.
Act of 1952—Section 241(a)(1)—Not nonquota immigrant as specified in immigrant visa.

### BEFORE THE BOARD

**Discussion:** This is an appeal from the order of the special inquiry officer requiring respondent's deportation upon the charges shown above. The appeal will be dismissed.

The facts have been stated in detail by the special inquiry officer. Briefly, respondent, a 25-year-old male, native and citizen of Greece, obtained a nonquota visa on the basis of his marriage on May 11, 1956, to a United States citizen. On February 14, 1957, he was issued the visa and was admitted to the United States for permanent residence on the same day. The Service claimed, and the special inquiry officer found, that a valid marriage did not exist between the parties because neither of the parties intended to enter into a *bona fide* marriage relationship, the marriage being entered into merely to enable the respondent who was illegally in the United States to become a permanent resident. Counsel argues that this finding was wrong because the parties considered themselves married and because the State of Pennsylvania where the marriage occurred considers the marriage valid. In support of this argument, counsel alleges that the alien attempted to live with his wife but was frustrated by her refusal to co-operate. As further evidence that the

217

parties regard themselves as married, counsel points out that the respondent has filed suit for divorce. Counsel cites *Lannamann v. Lannamann*, 171 Pa. Superior Ct. 147, 89 A. 2d 897, and *Bove v. Pinciotti*, 46 District Court 159, in support of the proposition that a valid marriage occurred here. The Service representative argues that the issue is the intent of the parties at the time they enterd into the marriage, and that the record conclusively establishes that at that moment neither party intended to enter into a *bona fide* marriage relationship.

We believe the rule to be drawn from the cases is that an alien is not legally entitled to receive a nonquota visa as the spouse of a citizen unless a valid marriage existed when the visa was issued and that even if the marriage is considered valid in the place where it is performed, it cannot serve as the basis for the proper issue of a nonquota visa to a "spouse" of the marriage unless there is a *bona fide* husband and wife relationship in existence.

There is a serious question as to whether the marriage here would be considered valid by the State of Pennsylvania. *Lannamann* was an action for annulment on the ground that the marriage ceremony had been gone through in jest, neither party intending to contract a valid marriage. The parties to the marriage had married on a dare; they had agreed that they would get married but would wait about six months to decide whether they wanted to 'take it seriously'. The marriage was never consummated. The court stated that the marriage ceremony had not been performed 'in jest', and that it was not void *ab initio* because the parties had agreed that the marriage should be a trial marriage and that either of the parties had a six-month option to cancel it. *Lannamann* is distinguishable because the court found the parties had agreed to be married but would decide later whether to cancel it. In the instant case the parties did not agree to take the marriage seriously for any period of time.

*Bove* was an action for annulment. It concerned two minors who had sexual relations and married upon the understanding they would not live together as husband and wife, and that they were going through the ceremony for the sole purpose of giving a name to a child whom they believed had been conceived from their relations. In fact, the child was never born. Later, the wife did bear a child, which according to her testimony was begotten by another man subsequent to the marriage. The court refused to grant an annulment stating it would not permit the child to be bastardized by the presumed parents, and that the marriage had been entered into in due form and was therefore not void *ab initio*. While this case is some support for counsel's position, it can be differentiated from the instant situation on the ground that declaration of the

marriage's invalidity would have bastardized a child. This would have been against public policy. In the instant case, the only child involved is an illegitimate child had by the wife prior to the "marriage." There is no claim that the respondent is the father of the child. Moreover, counsel has failed to take cognizance of the existence of authority, contrary to her position, also from a court of original jurisdiction. In *Osgood v. Moore*, 38 D. & C. 263, C. P. Tioga County (1941), a petition for divorce was filed by Osgood. Osgood and Moore had gone through a marriage ceremony with the understanding that the ceremony was not to be effectual to make them man and wife; that it was not to be consummated; and that they were not to live together as man and wife. The purpose of the marriage was to give a name to the unborn child of Moore who claimed that Osgood was the father of the child. Osgood denied paternity. After the marriage, the parties went to the homes of their respective parents and the marriage was never consummated. The court held that no valid marriage had taken place. The court stated "mutual consent and *bona fide* agreement of the parties, freely given and with the intention of entering into the valid state of wedlock, are fundamental and essential elements, without which the marriage is invalid unless consummated by cohabitation." The court held that since there had been no agreement to enter into the relationship, there was no marriage.

Questions of public policy which require a state to hold a marriage valid where it was entered into with the understanding that it was one of form only, should not be determinative in cases interpreting the immigration laws. The matter of primary importance in the immigration case involving the quota is the maintenance of quota safeguards which have been enacted into the law. These quota safeguards are waived for the alien spouse of a United States citizen. He is given the right to join his citizen spouse without the delay involved in qualifying under the quota. This facilitation of the entry of the alien was not done to create an exemption from the quota, but to expedite the reunion of families in the United States. Therefore, we must interpret the law so that it will not create the waiver if the actual reunion of a family is not involved. This requires the alien who seeks the waiver to establish that his "marriage" is one which envisions life together with the citizen spouse. The evidence of record here strongly proves that this marriage was not entered into to establish a life together or to create the relationship commonly understood as a "marriage," but rather that it was entered into to obtain an exemption under the quota and for no other reason and that this was the situation at the time the visa was granted. Such a marriage where a *bona fide* husband and wife relationship is not created does not entitle the alien to the

issuance of a nonquota visa (*Lutwak* v. *United States*, 344 U.S. 604; *Giannoulias* v. *Landon*, 226 F.2d 356 (C.A. 9, 1955); *United States* v. *Rubenstein*, 151 F.2d 915 (C.A. 2, 1945), cert. den. 326 U.S. 766).

We have carefully examined the evidence of record and contentions of counsel concerning it. We find that the record clearly justifies the finding of the special inquiry officer that the parties did not intend to consider themselves as husband and wife. We find no prejudicial error committed. The appeal will be dismissed.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.