## Patounas v. Patounas

*Rohrer, Honaman, Newcomer & Musser*, for exceptants.

WISSLER, P. J., MARCH 11, 1960. Plaintiff, Rena Mae Patounas, filed a complaint asking for an annulment of her marriage to defendant, Gus Patounas,

and, in the alternative, for a divorce on the ground of willful and malicious desertion of plaintiff by defendant for and during the term of two years beginning April 1, 1958.

At the time of the hearing before the master, plaintiff proceeded on the ground of annulment only, reserving the right to fix a hearing and present testimony at a later date on the ground of desertion. The master recommended that the complaint for annulment be dismissed and plaintiff has filed exceptions to the master's report.

In accordance with the duty which devolves upon us we have carefully read and examined the testimony introduced at the hearing, since there is no difference in that regard between applications for divorce and annulment: Fitzpatrick v. Miller, 129 Pa. Superior Ct. 324, 330.

The facts are not in dispute and plaintiff filed the following exception to the master's fourth conclusion:

"(1) The learned Master erred in his conclusion 4 wherein he stated the following: '4. The facts adduced at the Hearing from competent evidence do not entitle the plaintiff to a decree of annulment,' in that said conclusion was against the law applicable to the facts before the Master."

From the testimony it appears that the parties were married on March 31, 1958, at Bel Air, Md., by a justice of the peace; that plaintiff was born in McKeesport, and the birthplace of defendant is Greece; that plaintiff resides at 347 South President Avenue, Lancaster, and is a citizen of the United States, and defendant's last known address was 204 Academy Street, Trenton, N. J.; that plaintiff is 22 years of age and defendant 27 years of age.

Plaintiff was approached by certain persons to marry defendant upon condition that she receive

money. The terms of the agreement were that the parties were never to live together as man and wife and were not to be considered as married. The parties went through a marriage ceremony at Bel Air, Md., on March 31, 1958, after which plaintiff returned to Lancaster, and both went their separate ways. The next time plaintiff saw defendant was in New York City to sign papers so that defendant could come to the United States as her husband. The last time plaintiff saw defendant was in the district court in Philadelphia where defendant was charged with conspiracy to evade the immigration laws of the United States, to which he pleaded guilty.

It appears that the sole object of the marriage ceremony was to bring defendant into this country as a citizen. The marriage was never consummated and there was no agreement between plaintiff and defendant to have the marriage annulled.

Originally, the statutory provision as to annulment was limited and it was not until 1935 that it was broadened beyond the one ground of bigamy. The codified Divorce Law, as amended July 15, 1935, P. L. 1013, 23 PS §12, is as follows:

"In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bonds of matrimony."

The case before the court, therefore, is concerned with a "marriage . . . which is absolutely void . . . for any other lawful reason."

It is the contention of plaintiff that marriage is but a civil contract and the mutual assent of two parties is necessary for the formation of a legal contract. It is true it was so held in Osgood v. Moore, 38 D. & C. 263. But we believe as stated by Judge Bok in Bove v. Pinciotti, 46 D. & C. 159, 162, that marriage "is at least a civil contract, with status and the State's interest added to it." In Freedman on Law of Marriage and Divorce in Pennsylvania, vol. 1, §105, it is stated: "The Commonwealth is an interested third party in every proceeding for divorce. As said by Rice, P. J., [in *English v. English*, 19 Pa. Superior Ct. 586, 598]: 'In divorce proceedings . . . [there is a] well recognized principle, often expressed in the words, "The Commonwealth is always the unnamed third party to the proceeding." Divorces are granted on public grounds and not to suit the mere desires of the parties'."

In the case at bar the parties certainly intended to get married even though but for the avowed purpose of bringing defendant into this country as a citizen and in this respect it is very similar to the facts in the case of Lannamann v. Lannamann, 171 Pa. Superior Ct. 147, where the marriage was held valid, Judge Arnold stating at page 150: "Since in getting married both the parties did only what they intended to do," . . .

In the instant case the sole object of the marriage ceremony was to bring defendant into this country by conspiring to evade the immigration laws of the United States. This court is in accord with what Judge McCreary stated in Proios v. Proios, 76 D. & C. 509, 516:

"It has long been the law of Pennsylvania that a court will not assist a plaintiff who cannot prove his case without showing he has broken the law or participated in a fraudulent transaction: *Slater v. Slater*, **365 Pa. 321.**"

There is no defect in the formalities of the marriage before us. It was performed by a proper officer of the law after the issuance of a valid license, and although the parties never intended to treat the ceremony as a marriage there was no agreement to have the marriage annulled. The parties did in proper form precisely what they intended and agreed to do, namely, to get married, although for the purpose of defrauding the immigration laws of the United States. For such purposes this court will not aid or assist the relief sought by plaintiff.

And now, March 11, 1960, the exceptions to the master's report are dismissed. And it is ordered that the complaint asking that the marriage between Rena Mae Patounas and Gus Patounas be annulled is dismissed, with leave to plaintiff to further proceed on the alternative ground alleged in the complaint.