MATTER OF PHILLIS

In Visa Petition Proceedings

A-19320726

*Decided by Board July 7, 1975*

The United States citizen petitioner seeks to accord immediate relative status under section 201(b) of the Immigration and Nationality Act, as amended, to the beneficiary as his spouse. In view of evidence of record reflecting that the parties have never lived together in a husband and wife relationship; that petitioner has never listed beneficiary as his wife on any document nor contributed to her support; that there are contradictions in petitioner's statement regarding the living arrangements of the parties, as well as inconsistencies between the statements of petitioner and beneficiary with reference to their living arrangements and the date petitioner learned of beneficiary's immigration status; and the fact that at the time of the interview with beneficiary she was in the process of filing a divorce, it may reasonably be inferred that the parties entered into the marriage for the purpose of obtaining immigration benefits, and the evidence submitted by petitioner, principally in the form of testimony denying fraud, is insufficient to overcome the inference of fraud. Accordingly, the visa petition is denied for failure of petitioner to sustain his burden of submitting evidence to establish that this was a valid marriage from its inception.

ON BEHALF OF PETITIONER: John L. Desmond, Esquire
123 Mohawk Avenue
Scotia, New York 12302

The United States citizen petitioner applied for immediate relative status for the beneficiary as his spouse under section 201(b) of the Immigration and Nationality Act. In a decision dated January 27, 1975, the district director denied the petition. The petitioner has appealed from that decision. The appeal will be dismissed.

On the application submitted September 12, 1974, and in an interview conducted by the Immigration and Naturalization Service on November 13, 1974, the petitioner stated that he and the beneficiary had resided together since their marriage on May 17, 1974. However, in another interview conducted on January 15, 1975, the petitioner admitted that he and the beneficiary had never resided together. The petitioner then stated that his fear of telling his parents of his marriage was the reason for their separate living arrangements, and counsel again offers this explanation on appeal. Counsel also claims on the notice of appeal that

the petitioner lived with the beneficiary "for a substantial period of time," but he concedes that the petitioner "did not stay overnight" with the beneficiary.

In the January 15, 1975 interview, the petitioner also related that he had never listed the beneficiary as his wife on any document nor had he contributed toward her support. He admitted that the beneficiary had instituted a divorce action which she later terminated.

In that same interview, the petitioner denied that he was offered payment for marrying the beneficiary, and he further denied that he married her in order to assist her to obtain an immigrant visa. He also stated that he had no knowledge of the beneficiary's immigration status until after the marriage. He claimed that he intended to enter into a "valid" marriage with the beneficiary and testified that the marriage was consummated. On appeal, counsel declares that, although the petitioner is separated from the beneficiary, they continue to see each other, and there exists a "reasonable possibility" that they will live together as husband and wife in the future.

The record also contains the testimony of the beneficiary which was given in an interview with an Immigration Examiner on November 13, 1974. She asserted that she and the petitioner had lived together as husband and wife since the day of their marriage. She further claimed that she had advised the petitioner of her immigration status prior to their marriage. According to the petitioner's testimony, the date of this interview fell within the period during which the beneficiary was seeking a divorce.

An alien spouse of a United States citizen can acquire lawful permanent resident status without regard to numerical limitations under section 201(b) of the Act. This provision was included in the Act in order to prevent the separation of families and preserve the family unit. H. Rept. No. 1865, 82nd Cong., 2d Sess. 1680 (1952).

Although a marriage may be given legal effect in the United States or abroad, we are not required to recognize it for the purpose of conferring immigration benefits where the marriage was entered into for the purpose of evading the immigration laws. *Matter of M*, 8 I. & N. Dec. 217 (BIA 1958). See *Lutwak v. United States*, 344 U.S. 604 (1953); *Johl v. United States*, 370 F.2d 174 (1966).

The burden is on the petitioner to establish eligibility for the benefits sought. *Matter of Brantigan*, 11 I. & N. Dec. 493 (BIA 1966). The petitioner, therefore, must present evidence to support the existence of the marriage, i.e., the marriage certificate and proof of termination of any prior marriages. 8 CFR 204.2(c)(2). Further, where there is reason to doubt the validity of the marital relationship, he must present evidence to show that it was not entered into the primary purpose of evading the immigration laws.

That evidence could take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on any insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences. The conduct of the parties after marriage is relevant to their intent at the time of marriage. *Lutwak* v. *United States*, supra. Where the parties have never lived together, the amount of evidence required to establish that the marriage was not entered into for the fraudulent purpose of evading the immigration laws may be considerable.

The record in the present case contains evidence from which it may reasonably be inferred that the parties entered into the marriage for the purpose of obtaining immigration benefits. The following evidence is particularly significant: the contradictions in the petitioner's statement regarding the living arrangements of the parties; the inconsistencies between the statements of the petitioner and the beneficiary, specifically, those made with reference to their living arrangements and the date the petitioner learned of the beneficiary's immigration status; the fact that the interview with the beneficiary was conducted at a time when the beneficiary was in the process of filing a divorce. We find that the parties have never lived together in a husband and wife relationship. The evidence submitted by the petitioner, principally in the form of his testimony denying fraud, is insufficient to overcome the inference of fraud. We accordingly find that the petitioner has not sustained his burden under *Matter of Brantigan*, *supra*.

We note that the record supports the district director's statement that the petitioner "never lived with the beneficiary as husband and wife" and "failed to establish any clear intent to live with the beneficiary as man and wife." However, the district director does not indicate the proper basis for the denial in his decision. The evidence in the record leads us to conclude that the marriage was fraudulently entered into in order to confer immigration benefits upon the beneficiary. The petition will be denied because the petitioner failed to submit sufficient evidence to establish that this was a valid marriage from its inception.

This decision is without prejudice to submission of a new visa petition. However, it should be supported by evidence which establishes the existence of a valid marriage, recognizable under the immigration laws.

The appeal will be dismissed.

ORDER: The appeal is dismissed.