[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11424
Non-Argument Calendar
_____

Agency No. A075-440-130


DRISS ZERROUK,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 4, 2014)

Before WILSON, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Driss Zerrouk, a 52-year-old native and citizen of Morocco, seeks review of the Board of Immigration Appeals' removal order, which denied his petition to remove the conditions of his residence.  Mr. Zerrouk first arrived in this country as a nonimmigrant visitor in 1995, but following his 1997 marriage to a United States citizen, his status was adjusted to that of a conditional permanent resident.  When his wife, Tammy Lewis, was murdered less than two years later, he petitioned to remove the conditional basis of his residence.  Several years later, the Department of Homeland Security interviewed him regarding his petition, which it denied, and thereafter initiated removal proceedings against him.  After several hearings in his removal proceedings, the Immigration Judge denied Mr. Zerrouk's petition, finding that he married to procure immigration benefits.  The BIA adopted and affirmed the IJ's decision, which Mr. Zerrouk petitioned our court to review.

In his petition for review, Mr. Zerrouk first argues that the BIA and the IJ legally erred when, in determining whether his marriage was *bona fide*, each considered and gave "great weight" to evidence of his conduct following his wife's murder.  He also maintains that, in any case, substantial evidence did not support the BIA's final decision that he married for the purpose of obtaining an immigration benefit.

We generally only review the BIA's final decision, but insofar as the BIA adopts the IJ's reasoning, as is the case here, we also review the IJ's decision.  *Al*

2

*Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Legal determinations are reviewed *de novo*.  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817 (11th Cir. 2004).  However, factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Al Najjar*, 257 F.3d at 1283-84 (internal quotation marks omitted).  "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).  In other words, administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

An alien who marries a United States citizen may be granted conditional lawful permanent resident status.  *See* 8 U.S.C. § 1186a(a)(1).  Generally, within 90 days of the 2-year anniversary of the grant of conditional residence, the alien and his spouse must file a joint petition to remove the condition.  *See id.* §§ 1186a(c)(1), (d)(2); 8 C.F.R. § 1216.2.  However, an alien whose spouse dies before the expiration of this period is exempted from the "joint" filing requirement, and may petition individually.  *In re Rose*, 25 I.&N. Dec. 181, 183 (BIA 2010).  If the Attorney General makes a favorable determination after reviewing the petition and conducting an interview, the conditional basis of the permanent residence

3

status is removed. *See* 8 U.S.C. § 1186a(c)(3)(B). But if the Attorney General finds that "the qualifying marriage . . . was entered into for the purpose of procuring the alien's admission as an immigrant," the Attorney General must terminate the alien's permanent resident status. *See* § 1186a(b)(1)(A).

An alien whose permanent resident status is terminated may have that decision reviewed in removal proceedings. *See* § 1186a(c)(3)(D). In those proceedings, the burden is on the Government to demonstrate by a preponderance of the evidence that "the facts and information . . . alleged in the petition are not true with respect to the qualifying marriage." *See id.* The proper inquiry is whether the parties intended to establish a life together at the time they were married. *In re McKee*, 17 I.&N. Dec. 332, 334 (BIA 1980). In considering whether an alien entered into a qualifying marriage in good faith, the BIA shall consider evidence such as a lease showing joint tenancy of a residence, documentation showing the commingling of finances, or affidavits of third parties regarding the *bona fides* of the relationship. 8 C.F.R. § 1216.4(a)(5). Notably, the conduct of the parties after marriage may be relevant in determining their intent at the time of marriage. *In re Phillis*, 15 I.&N. Dec. 385, 387 (BIA 1975).

Mr. Zerrouk first argues that the BIA and IJ legally erred when each considered evidence of his conduct after his wife was killed to support the conclusion that his marriage was not *bona fide*. Although the focus in this context

4

is on the intent of the alien and his spouse at the inception of the marriage, the BIA has held that the parties' conduct after the marriage is relevant. *In re Phillis*, 15 I.&N. Dec. at 387. Consequently, the BIA and IJ were not precluded from considering Mr. Zerrouk's conduct after Ms. Lewis's death in determining whether his marriage was *bona fide*.

Next, Mr. Zerrouk argues that substantial evidence does not support the BIA's and IJ's conclusion that he married Ms. Lewis in order to procure immigration benefits. Mr. Zerrouk presented evidence in his favor, such as the testimonial evidence of two of Ms. Lewis' relatives and documentary evidence of several joint bank and credit card accounts and his cohabitation with his wife. The IJ acknowledged this evidence, characterizing it as "extremely weighty." However, the IJ went on to note that the government established by a preponderance of the evidence that the facts and information presented by Mr. Zerrouk did not support the conclusion that his marriage was *bona fide.*

In support of its decision, the IJ (as affirmed by the BIA) relied on the evidence which demonstrated that Mr. Zerrouk and Ms. Lewis dated for two months or less before being married and that he was ignorant of certain significant personal details concerning Ms. Lewis' personal life, such as the fact that she had two very young children from a prior relationship, one of them likely born just prior to meeting Mr. Zerrouk. The IJ noted that although Mr. Zerrouk and Ms.

5

Lewis had joint bank and credit card accounts, there was no evidence that she ever used these accounts herself.

The IJ also found significant the facts surrounding the death of Ms. Lewis, who was shot to death at a New Year's Eve party by her former boyfriend and father of her two children. Mr. Zerrouk did not attend the party because he had to work, but learned about the shooting from Ms. Lewis' sister. Mr. Zerrouk went to the hospital but did not ask to view the body of his wife, who had already died. The IJ also noted that Mr. Zerrouk did not ask for his wife's wedding ring, did not participate in the funeral arrangements or provide her burial clothes, did not attend her wake, and only briefly attended her funeral. Mr. Zerrouk did not report his wife's death, but instead her death was reported by her sister, who listed Mr. Zerrouk as the husband on the death certificate but provided a different address than the marital address where Mr. Zerrouk said he and Ms. Lewis had lived. Mr. Zerrouk testified that he gave his wife's sister $4000 for the funeral arrangements, but the IJ noted that he did not provide any corroborating evidence for this payment. The IJ also found it important that Mr. Zerrouk did not attend the murder trial, that no one told the authorities about Mr. Zerrouk, or that it was not even mentioned during the murder trial that Ms. Lewis had a husband at the time of her death. The IJ and BIA found unpersuasive Mr. Zerrouk's explanations for his lack of involvement in these events. Finally, the IJ was not persuaded by Mr. Zerrouk's

6

explanations for the inconsistences and discrepancies between the answers he provided at his initial interview with the immigration officials on his petition to remove the conditions on his residence and his testimony during his removal proceedings.  *See Adefemi*, 386 F.3d at 1027.

Because substantial evidence supports the IJ and BIA's decision that Mr. Zerrouk did not enter his marriage in good faith and we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary," we find no reversible error in the BIA's affirmance of the IJ's denial of Mr. Zerrouk's petition to remove the conditions on his residence and further order of removal. *See Al Najjar*, 257 F.3d at 1283-84; 8 U.S.C. § 1252(b)(4)(B).

**PETITION DENIED.**