In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 14-2430

VERA PUTRO,

Petitioner,

v.

LORETTA E. LYNCH,
Attorney General of the United States

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A099-280-517

_____

ARGUED APRIL 27, 2016 — DECIDED JULY 7, 2016

_____

Before FLAUM, MANION, AND WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. This case involves the application of an exemption in the immigration laws for an alien seeking to obtain unconditional lawful permanent resident status as a result of her marriage to a U.S. citizen. Vera Putro, a citizen of Latvia, married a U.S. citizen in 2004 and based on that marriage gained conditional permanent residency. Her residency did not become unconditional, howev-

er, because her husband passed away before they could peti-
tion jointly to remove the conditions. Putro petitioned on her
own to have the conditions removed. U.S. Citizenship and
Immigration Services construed the petition as a request for
a discretionary waiver of the joint-petition requirement, de-
nied the waiver, and ordered Putro removed. But in fact Pu-
tro did not need a waiver because her husband's death dur-
ing the conditional period exempted her from the joint-filing
requirement. In mistakenly evaluating her petition as a re-
quest for a waiver, the agency erroneously placed on Putro
the burden of proving that the marriage was bona fide. So
we grant the petition.

Putro first entered the U.S. on a 4-month, foreign-
exchange student visa in 1999 and overstayed. In November
2004 she married Michael Zalesky, a U.S. citizen. Putro was
granted conditional legal permanent residence ("LPR") sta-
tus as the spouse of a U.S. citizen in July 2006, *see* 8 U.S.C.
§ 1186a(1); 8 C.F.R. § 216.1.

Four months later, in November, Zalesky died.

Zalesky's untimely death complicated Putro's immigra-
tion status. To gain unconditional LPR status, Putro and
Zalesky had to jointly petition the agency for removal of the
conditions within the 90-day period before the second anni-
versary of her obtaining conditional permanent residency
(i.e., between mid-April and mid-July of 2008). *See* 8 U.S.C.
§ 1186(c)(1)(A), (d)(2); 8 C.F.R. § 216.4(a)(1). Of course filing
a joint petition was no longer possible, so in June 2008 Putro
filed a Form I-751 Petition to Remove Conditions on Resi-
dence, checking the box specifying that she sought a waiver
of the joint-filing requirement because her spouse had died.

The agency denied Putro's petition, stating that it had "reason to believe" that she had committed marriage fraud by marrying Zalesky. The agency construed Putro's petition as a request for a waiver of the joint-filing requirement available to noncitizens whose marriages terminate in divorce or annulment. This waiver, according to the relevant federal statute, is available to a noncitizen if she can demonstrate that she entered marriage in good faith but that the marriage was "terminated (other than through the death of the spouse)." *See* 8 U.S.C. § 1186a(c)(4)(B); 8 C.F.R. § 216.5(a)(1)(ii). In denying Putro's petition, the agency concluded that she failed to refute evidence in her file reflecting that her marriage to Zalesky was a sham—primarily a report that law enforcement prepared after investigating Zalesky's death. The agency terminated Putro's status as a conditional permanent resident and issued a Notice to Appear charging her with removability, *see* 8 U.S.C. § 1227(a)(1)(D)(i).

During removal proceedings an immigration judge advised Putro that she had the right to renew her request for the waiver before the court. He allowed her to present evidence and reminded her that she had the burden of proving that the marriage was bona fide.

Putro and several witnesses testified in support of her petition. Putro testified that she met Zalesky in January of 2004 and married him in November 2004. Putro said that their first year of marriage had gone well, but that Zalesky's drug problems soured their relationship. Zalesky began lying to her and sometimes stayed away from their home for days at a time. In the summer of 2006, around the time her conditional status finally came through, they separated. In November 2006 Zalesky died of a drug overdose in his parents'

basement. Putro's mother, sister, and several friends all testified to visiting the couple in their home or meeting them at social events.

The government called two investigative agents and Zalesky's parents to testify. According to the agents, during the investigation following Zalesky's death they had been told by Zalesky's family and Zalesky's friend Jeffrey Armstrong that Zalesky had been in an arranged marriage with a Russian woman and that he was paid to marry her in exchange for citizenship. Putro's counsel repeatedly raised hearsay objections to the agents' testimony regarding Armstrong's statements (Armstrong never testified because Putro's counsel was unable to serve him, despite the IJ having prepared a subpoena for his appearance). Zalesky's parents did testify, but both swore that they had no knowledge of their son being in an arranged marriage and no memory of telling either investigator that their son was in an arranged marriage.

The IJ denied Putro's application for the waiver of the joint-filing requirement and concluded that she was removable. The IJ found that Putro had failed to establish by a preponderance of the evidence that she and Zalesky had a bona fide marriage. Her testimony and that of her witnesses, he said, was "unpersuasive." The government, in contrast, had presented "reliable" evidence that family members and Armstrong had told investigators that the marriage was a fraud.

Putro appealed to the Board of Immigration Appeals, but it upheld the IJ's ruling and dismissed her appeal. "[E]ven assuming the credibility of the respondent and all testifying witnesses," the Board explained, she did not meet her bur-

den of proving that she entered her marriage in good faith. The Board agreed with the IJ that the testimony of Putro and her witnesses was vague, that it did not sufficiently reflect a shared life, and that Putro did not adequately rebut the government's evidence that the marriage was a sham. Acknowledging that Zalesky's parents had recanted their statements to investigators, the Board nevertheless found that the IJ properly relied on the investigators' testimony and reports. The Board also rejected Putro's due-process challenge to the handling of Armstrong's evidence: even though Armstrong did not appear in court for cross-examination, Putro was able to cross-examine both agents about their conversations with Armstrong as well as Zalesky's parents about their statements to authorities that the marriage was arranged.

On petition for review, Putro argued that the IJ had misapplied the standard of proof, and at oral argument we ordered the parties to submit supplemental briefing on how this case is affected by the decision in *Matter of Rose*, and particularly the portion of the decision in which the Board states:

> [T]he death of a petitioning spouse during the 2-year conditional period excuses the general requirement that a petition to remove the conditional basis of an alien spouse's status must be "joint." Thus, a separate waiver under section 216(c)(4) of the Act is not required if the surviving spouse timely files an I-751 petition requesting removal of the conditional basis of his or her status and appears for a personal interview.

25 I. & N. Dec. 181, 182 (BIA 2010).

In her submission counsel for the Attorney General did not address the applicability of *Matter of Rose* and instead moved to remand the proceedings to the Board so that it may consider this issue in the first instance. But we see no reason to delay determination of the legal issue at the heart of this case, so we deny that motion. *See Marin-Rodriguez v. Holder*, 612 F.3d 591, 596 (7th Cir. 2010).

We agree with Putro that the IJ mishandled her petition to remove conditions on her status by construing it as a request for a waiver of the joint-filing requirement rather than recognizing that she qualified for an exemption of that requirement. Because Zalesky died within the two-year conditional period and Putro timely petitioned to remove her conditional status, she should have been excused from the joint-filing requirement. *Matter of Rose,* 25 I. & N. Dec. at 182. This conclusion was applied in the only federal appellate decision (an unpublished one) to address the issue. *See Zerrouk v. U.S. Att'y. Gen.*, 553 F. App'x. 957, 959 (11th Cir. 2014) (recognizing exemption of "joint" filing requirement for alien whose spouse dies within two-year conditional period, but concluding that substantial evidence supported determination that marriage was not bona fide). Moreover, the discretionary waiver does not even apply to Putro, because that waiver requires that the marriage be "terminated (other than through the death of the spouse)." 8 U.S.C. § 1186(c)(4)(B). That requires divorce or annulment, *see* Memorandum from Donald Neufeld, Acting Assoc. Director, USCIS, to Directors, I-751 Filed Prior to Termination of Marriage (Apr. 3, 2009). Though Putro separated from her husband before his death, they never divorced, and the marriage was terminated by his death.

The error was significant because it had the effect of shifting the burden of proof that Putro's marriage to Zalesky was bona fide. Because the IJ thought that Putro needed a waiver, he placed the burden of proof on her and ultimately found that she failed to establish by a preponderance of the evidence that she had a bona fide marriage. Had the burden of proof properly been applied, the government would have had to demonstrate by a preponderance of the evidence that the marriage was not bona fide. *See Matter of Rose*, 25 I. & N. Dec. at 185; 8 U.S.C. § 1186a(c)(3)(D); *cf. Lara v. Lynch*, 789 F.3d 800, 804 (7th Cir. 2015) (noncitizen applying for discretionary waiver of joint filing petition bears burden of proving that marriage at time of inception was bona fide). Moreover, unlike a grant of the waiver—which is discretionary—the agency "shall" remove the conditional basis of the petitioner's status as long as he or she meets the petitioning requirements and the government cannot disprove that the marriage is bona fide. *See* 8 U.S.C. § 1186(a)(3)(B). This case must be remanded to the agency so that the IJ can evaluate her petition under the proper standard of proof. *See Matter of Rose,* 25 I. & N. Dec., at 184–85.

Accordingly, we GRANT the petition and REMAND the case for determination under the proper standard.